UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James Allen Martin, | Civ. No. 11-465 (DSD/JJK) |
| Plaintiff, | |
| v. | |
| Dennis Benson, CEO of the Minnesota Sex Offender Program, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

James Allen Martin, Minnesota Sex Offender Program, 1111 Hwy. 73, Moose Lake, MN 55767, *pro se*.

Ricardo Figueroa, Esq., Minnesota Attorney General's Office, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. No. 7). The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons discussed below, this Court recommends that Defendant's motion be granted.

## BACKGROUND

**I.    The Minnesota Sex Offender Program's Vocational Work Program**

The Minnesota Sex Offender Program's ("MSOP") vocational work program is authorized under Minnesota Statute § 246B.05, which states that "[t]he commissioner of human services shall develop a vocational work program

for persons admitted to the Minnesota sex offender program." The commissioner is allowed to develop "vocational activities for sex offender treatment for civilly committed sex offenders as the commissioner deems necessary and suitable to the meaningful work skills training, educational training, and development of proper work habits and extended treatment services for civilly committed sex offenders . . ." Minn. Stat. § 246B.06, subd.1(a). The vocational activities established pursuant to this statute are –

> designated Minnesota State Industries and must be for the primary purpose of sustaining and ensuring Minnesota State Industries' self-sufficiency, providing educational training, meaningful employment, and the teaching of proper work habits to the individuals in the Minnesota sex offender program under this chapter, and not solely as competitive business ventures.

*Id.* Wages earned by civilly committed sex offenders who participate in the vocational work program are established at the discretion of the commissioner and "[t]he commissioner has the authority to retain up to 50 percent of any payments made to an individual participating in the vocational work program for the purpose of reducing state costs associated with operating the Minnesota sex offender program." *Id.* at subd.6.

## II.     Plaintiff's Claim

In his *pro se* Complaint (Doc. No. 1), Plaintiff, a civilly committed sex offender and resident of an MSOP facility, contends that the Defendant Dennis Benson, as Chief Executive Officer of MSOP, has violated 29 U.S.C. § 206, the minimum wage provision of the Fair Labor Standards Act ("FLSA"). (*Id.* ¶¶ 2–3.)

2

He alleges that he earned minimum wage as an employee within MSOP's vocational work program from September 2, 2009 through March 30, 2010 pursuant to 29 U.S.C. § 206, but argues that Defendant Dennis Benson, Chief Executive Officer of MSOP, violated the statute by withholding 50% of his earnings "as a work-related expense to be applied toward the cost of care." (*Id.* ¶ 2.) Plaintiff seeks monetary relief in the form of unpaid wages plus "an additional equal amount as liquidated damages" as provided for in 29 U.S.C. § 216(b). (*Id.* ¶ 3.)

In lieu of answering the Complaint, Defendant filed the Motion to Dismiss that is now before the Court (Doc. No. 7), on the ground that the Complaint fails to state a claim upon which relief can be granted.[1]  *See* Fed. R. Civ. P. 12(b)(6). As described below, this Court recommends that Defendant's Motion to Dismiss be granted.

## ANALYSIS

**I.     Standard of Review**

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the Plaintiff.  *Schaller Tel. Co. v. Golden Sky Sys.,*

---

[1]     Defendant has not raised the issue of Eleventh Amendment immunity, which is likely because Minnesota has waived immunity for violations of various federal statutes, including the FLSA.  Minn. Stat. § 1.05.  Thus, there is no issue of subject-matter jurisdiction that prevents this Court from considering Plaintiff's claim.

*Inc.*, 298 F.3d 736, 740 (8th Cir. 2002). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 409 U.S. 319, 326 (1989). In addition, this court notes that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, even a *pro se* complaint must allege facts, and not just bare,

4

unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions.").

## II.     Fair Labor Standards Act

### A.     The Economic-Reality Test

As mentioned, Plaintiff asserts that Defendant has violated 29 U.S.C. § 206, which requires the payment of minimum wage. The FLSA's minimum wage standard is one of several provisions enacted to serve the law's purposes of "providing minimum standards of living for workers" and protecting free market competition. *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994). In order for minimum wage requirements to apply, an employer-employee relationship must exist. *See* 29 U.S.C. 206(a). Relevant to this inquiry are sections 203(d) and (e)(2)(C), which define employer and employee respectively. An employer is defined as "any person directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). An employee includes "any individual employed by a State, [or] political subdivision of a State." 29 U.S.C. § 203(e)(2)(C). These statutory definitions serve only as a starting point in an FLSA analysis, as "[t]he Supreme Court has suggested that 'employee' is expansively defined under the FLSA and has stated that courts should determine whether an individual is an 'employee' in light of the 'economic reality' of the situation under the totality of the circumstances, rather than rely on technical labels." *Barnett v. Young Men's Christian Ass'n*, No. 98-3625, 1999 WL

110547, at *1 (8th Cir. Mar. 4, 1999) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325–26 (1992) and *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)).

In applying the economic-reality test to work done by prisoners during their incarceration courts have found that, in most situations, prisoners are not protected by the provisions of the FLSA. *McMaster v. Minnesota*, 30 F.3d 976, 978 (8th Cir. 1994); *Alexander v. Sara, Inc.*, 721 F.2d 149, 150 (5th Cir. 1983). However, "[c]ircuit courts have consistently rejected the notion that all prisoners are categorically excluded from coverage under the FLSA." *Barnett*, 1999 WL 110547, at *1 (citing *Danneskjold v. Hausrath*, 82 F.3d 37, 40-41 (2d Cir. 1996); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 685 (D.C. Cir. 1994); *Hale v. Arizona*, 993 F.2d 1387, 1393 (9th Cir. 1993) (en banc); *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992); *Watson v. Graves*, 909 F.2d 1549, 1554 (5th Cir. 1990)).

For instance, in *McMaster*, the Eighth Circuit held that the inmate plaintiffs were not "employees" under the FLSA where they were assigned work as part of their sentence and where the work was "for the primary purposes of training, rehabilitation and reduction of idleness." *McMaster*, 30 F.3d at 980. The court reasoned that "the relationship between the plaintiffs and the state [was] not an employment relationship, but a custodial relationship in which the FLSA does not apply." *Id.* By comparison, the court in *Barnett* found that the inmate plaintiff had not failed to state a claim for relief where he voluntarily worked for a private organization outside of the prison walls and without supervision from prison

6

officials.  *Barnett*, 1999 WL 110547, at *1, *3.  The court noted that Barnett's situation "present[ed] materially different facts than those before [the court] in *McMaster*."  *Id.* at *2.  Thus, while the economic reality that accompanies much of prison labor often result in a determination that the FLSA does not apply, it is not simply an individual's status as a prisoner that determines the applicability of the FLSA, but the economic reality itself that determines the availability of the law's protections.

Unlike prisoners, mental health patients working in mental health institutions have been deemed protected by the minimum wage requirements of the FLSA.  *Weidenfeller v. Kidulis*, 380 F. Supp. 445 (E.D. Wis. 1974); *Souder v. Brennan*, 367 F. Supp. 808 (D.C.D.C. 1973).  In applying the economic-reality test, the *Souder* court found that "the reality is that many of the patient-workers perform work for which they are in no way handicapped and from which the institution derives the full economic benefit."  *Id.* at 813.  In an effort "to prevent curtailment of opportunities for employment" that resulted from the holding in *Souder*, Congress has amended the FLSA to allow the payment of wages to handicapped workers "whose earning or productive capacity is impaired by age, physical or mental deficiency, or injury" at rates lower than the minimum wage pursuant to the grant of a special certificate.  *See* 29 U.S.C. § 214(c).  In addition, the Department of Labor has defined "patient worker" as "a worker with a disability . . . employed by a hospital or institution providing residential care where such worker receives treatment or care," 29 C.F.R. § 525.3, and has

7

promulgated a number of other regulations governing the employment of handicapped workers. 29 C.F.R § 525.1 *et seq.*

### B.     Plaintiff's Fair Labor Standards Act Claim

Plaintiff asserts that the FLSA must apply to him because he is a mental health patient worker while Defendant argues primarily that Plaintiff should be treated as a prisoner and thus excluded from FLSA protection. However, both of these arguments fail for different reasons. Plaintiff's argument that he is a mental health patient worker cannot prevail because the cases holding that mental health patients are entitled to minimum wage under the FLSA and the regulations that followed only address the work of the mentally ill and disabled. *Weidenfeller*, 380 F. Supp. at 447; *Souder*, 367 F. Supp. at 811. Plaintiff is neither mentally ill nor disabled. *See In re Martin*, 661 N.W.2d 632, 637 (Minn. Ct. App. 2003) (explaining that doctors at the Minnesota Security Hospital "evaluated [Plaintiff] and concluded that he was not properly committed as MI & D because he was not mentally ill"). Rather, Plaintiff was committed as a sexually dangerous person, a status that is defined separately from a "[p]erson who is mentally ill" and a "[d]evelopmentally disabled person." Minn. Stat. § 253B.02, subds. 13,14,18c. Differing treatment based on these differing statuses has been upheld and Plaintiff's status as a sexually dangerous person does not bring him under the purview of laws governing mentally ill and handicapped workers. *See Nelson v. Minnesota*, No. Civ. 04-192, 2005 WL 1719369, at *6 (D. Minn. July 20, 2005) (deferring to Minnesota state court cases that "have recognized the

difference between those individuals committed as [sexually dangerous persons] and those committed as [mentally ill and dangerous]"); *Beaulieu v. Ludeman*, No. 07-CV-1535, 2008 WL 2498241, at *21 (D. Minn. June 18, 2008) ("In the present case, this Court finds that '[p]ersons involuntary committed as mentally ill pursuant to Minn. Stat. § 253B.02, subds. 18(b) and 18(c) (2002), are not similarly situated to those individuals involuntarily committed as SDP or SPP[] under Minn. Stat. § 253B.02, subds. 18(b) and 18(c) (2002), because the statutory criteria for the respective commitments are fundamentality different.'") (footnote omitted) (quoting *McDeid v. O'Keefe*, No. C0-03-177, 2003 WL 21525128, at *5 (Minn. Ct. App. July 8, 2003)).

However, Plaintiff correctly argues that precedent cited by Defendant regarding the application of the FLSA to prisoners does not entirely control the outcome of this case. While these cases are informative in the present context, a categorical determination does not dictate the applicability of the FLSA to civilly committed sex offenders such as Plaintiff. Rather, as demonstrated by the decisions in *McMasters* and *Barnett*, the economic-reality test must be applied to the unique circumstances presented in this case in order to determine Plaintiff's status under the FLSA and, as is the case even in the context of prisoner FLSA claims, this Court will not categorically exclude civilly committed sex offenders from FLSA protection. But after reviewing the pleadings, this Court finds that the economic reality of Plaintiff's work within MSOP's vocational work program is not the type of employment covered by the FLSA.

9

The statutes governing the MSOP vocational work program are structured in a manner that significantly limits the program's potential to interfere with free market competition. It is true that the applicability of the FLSA to Plaintiff is a question of federal law and that under the Supremacy Clause the state cannot, by statute, simply exempt itself from these federal requirements. However, the nature of the vocational work program, as established by the state, does influence the economic reality of the employment situation at hand. As authorized by the Minnesota legislature, the MSOP vocational work program is specifically designed to provide "meaningful work skills training, educational training, and development of proper work habits and extended treatment services for civilly committed sex offenders . . . ." Minn. Stat. § 246B.06, subd. 1(a). To the extent that the program engages in commercial activity, this is incidental to the program's primary purpose of providing meaningful work for sex offenders who are in the custody of the state for a very, very long time.[2]

> The industrial and commercial activities authorized by this section are designated Minnesota State Industries and must be for the primary purpose of sustaining and ensuring Minnesota State Industries' self-sufficiency, providing educational training, meaningful employment, and the teaching of proper work habits to the individuals in the Minnesota sex offender program under this chapter, and not solely as competitive business.

Minn. Stat. § 246B.06, subd. 1(a).

The work that Plaintiff is paid to do in this vocational work program has few

---

[2] In fact, no civilly committed sex offender has ever been permanently released from MSOP. Office of the Legislative Auditor, *Evaluation Report: Civil Commitment of Sex Offenders* 19 (2011).

of the "indicia of traditional, free market employment" covered by the FLSA. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 686 (D.C. Cir. 1994). This is shown by the various provisos in the Minnesota Statutes authorizing the program that serve to remove it from common competitive commercial activity. The net profits from the vocational work program, for example, must be used for the benefit of the civilly committed sex offender workers themselves "as it relates to building education and self-sufficiency skills," not for the benefit of an owner or operator of a business. Minn. Stat. § 246B.06, subd. 1(b). In marked contrast to the pro-competitive mandates of free market competition, prior to commencement of the vocational work program, the program commissioner had to "consult with representatives of business, industry, organized labor," and various state agencies. *Id.* This consultation was required in order to –

> determine the quantity and nature of goods, wares, merchandise, and services to be made or provided, and the types of processes to be used in their manufacture, processing, repair, and production consistent with the greatest opportunity for the reform and educational training of the civilly committed sex offenders, and with the best interests of the state, business, industry, and labor.

*Id*. This effort to assure that the interests of private businesses that might be adversely affected by the low cost production of the vocational work program are taken into account is characteristic of prison industry programs "where courts have denied FLSA coverage to prisoners." *Barnett*, 1999 WL 110547, at *2. It is obviously not characteristic of the free market competition that the FLSA was intended to protect. *McMasters*, 30 F.3d at 980 ("[T]he FLSA was . . . intended to

prevent unfair competition resulting from the use of underpaid labor."); *see also* 29 U.S.C. § 202(a)(3).

Further, although outside skilled workers may be utilized for administration, supervision, and "proper instruction of the civilly committed sex offenders and the efficient operation of . . . vocational activities," the focus of the vocational work program must be on providing work for civilly committed sex offenders and it therefore must "utilize civilly committed sex offender labor to the greatest extent feasible." Minn. Stat. § 246B.06, subd. 1(c). And, in accepting work projects for the program, the commissioner must give preference to projects for state departments and agencies, not to those that would simply be most profitable. Minn. Stat. § 246B.06, subd. 1(d). Thus, the program is restricted from competing with businesses in the general labor market and is limited in its ability to undermine the market by providing workers at the lowest wage rates.

The program finances are also strictly controlled. The program commissioner is provided with a form of working capital (a "revolving fund"), but the use of the money is restricted. Minn. Stat. § 246B.06, subd. 2. The fund "must be used for the vocational work program" and "[w]hen practical, purchases must be made from small targeted group businesses designated under section 16C.16." *Id.* Unlike most commercial operations in the competitive market, the vocational work program is thus limited in its ability to negotiate with suppliers and to create downstream markets for its products. There are also strict limitations placed on the program commissioner's ability to borrow money to

meet the ongoing demands of the program.  Minn. Stat. § 246B.06, subd. 4.

These are not the type of restrictions that would typically apply in a commercial

firm's lending or banking relationship and again demonstrate the fact that MSOP

does not operate as "employer" in the traditional sense.

In addition, Plaintiff concedes that as a resident of MSOP's facility in

Moose Lake, most of his basic needs are met by the State, the only exception

being the provision of clothing.  (Doc. No. 12, Pet'r's Reply Mem. 7.)  Plaintiff has

not alleged that his earnings are needed to preserve anything beyond this very

limited aspect of his standard of living.  Also, while Plaintiff volunteers for and

was accepted into the MSOP vocational work program, he works for and has

always been under the control and supervision of the state, not a private

employer.  Thus, the reality is that any work performed by Plaintiff takes place

within a state-run facility that provides him with a minimum standard of living and

within the context of a program that is significantly limited in its ability to compete

with market forces.

## CONCLUSION

This Court's conclusion that the FLSA does not apply to Plaintiff, although

the product of a slightly different analysis, is consistent with the decisions of

several other courts that have addressed the issue of the FLSA's applicability to

civilly committed sex offenders.[3]  *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir.

---

[3]     While this Court cites with approval the ultimate conclusions reached by these courts, it finds that several of these analyses fall short because they

2008) (affirming the dismissal of a civilly committed sex offender plaintiff's claim based on the FLSA); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (finding that payment of minimum wage to civilly committed sexually dangerous persons is unnecessary "to preserve the statutory purposes of the FLSA"); *Hendrickson v. Nelson*, No. 05-C-1305, 2006 WL 2334838, at *1–2 (E.D. Wis. Aug. 10, 2006) (finding that civilly committed sex offenders are not covered by the FLSA); *Shaw v. Briody*, No. 2:02CV500FTM-33SPC, 2005 WL 2291711, at * 3 (M.D. Fla. Sept. 20, 2005) (finding that the FLSA minimum wage provision did not apply in the context of a "civil detainee/detainor relationship").  Here, the economic reality of Plaintiff's work within the MSOP vocational work program is not the type of work that gives rise to the type of employment relationship contemplated by the FLSA. And because Plaintiff's basic needs are met almost entirely by the State, and given the limits on the MSOP vocational work program that prevent it from operating in a truly competitive manner, the purposes of the FLSA would not be

---

categorize civilly committed sex offenders as prisoners and rely on that determination to conclude that the FLSA does not apply rather than making an inquiry into the economic reality presented.  The conclusion that the FLSA does not apply to a civilly committed sex offender should not be arrived at just because, as a committed individual, he is confined like those in prison or because his confinement is related to criminal activity.  Indeed, a determination that civilly committed sex offenders are more similar to prisoners than they are to the mentally ill does not end the analysis because even one's "status as an inmate does not foreclose inquiry into FLSA coverage." *Watson v. Graves*, 909 F.2d 1549, 1554 (5th Cir. 1990); *see also Gonzalez v. Mayberg*, No. CV-07-6248, 2009 WL 2382686, at *4 (C.D. Cal. July 31, 2009) (rejecting the notion that civilly committed sex offenders are not entitled to FLSA protection simply because they are more like prisoners than mental patients and finding that California state law governing sex offender civil commitment indicated that they could be deemed "employees" under the FLSA).

served by applying the FLSA's minimum wage requirement in this case.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss (Doc. No. 7), be **GRANTED**; and

2. This action be **DISMISSED WITH PREJUDICE**.


Date: October 3, 2011

                                        *s/ Jeffrey J. Keyes*
                                        JEFFREY J. KEYES
                                        United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 17, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.